**SO ORDERED.**

**SIGNED this 7 day of June, 2017.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

| | |
|---|---|
| **LARRY ALBERT HURLBURT,** | Case No. 16-01964-5-SWH |
| Debtor | Chapter 13 |
| -------------------------------------------------- | |
| **LARRY ALBERT HURLBURT,** | |
| Plaintiff, | Adversary Proceeding No. 16-00031-5-SWH |
| v. | |
| **JULIET J. BLACK,** | |
| Defendant. | |
| -------------------------------------------------- | |

**MEMORANDUM OPINION AND ORDER**

The issue before the court is whether a chapter 13 debtor may "cram down" the claim of a creditor secured only by a seller-financed purchase-money deed of trust on the debtor's residence to the value of the real property. The matter turns on the interplay between sections 502(b), 506(a), 1322(b)(2), and 1322(c)(2) of the Bankruptcy Code and the North Carolina anti-deficiency statute, North Carolina General Statutes § 45-21.38, and has implications beyond the facts of this case to

chapter 13 cases filed after a debtor receives a discharge under chapter 7, colloquially known as "chapter 20" cases.

## FACTS AND PROCEDURAL HISTORY

Larry Albert Hurlburt filed a petition for relief under chapter 13 of the Bankruptcy Code on April 13, 2016. Mr. Hurlburt owns and resides at real property located at 130 South Navassa Road, Leland, North Carolina 28451 (the "Property"). Mr. Hurlburt purchased the Property from Juliet J. Black in May 2004. Ms. Black financed a portion of the purchase price in the amount of $131,000 and is the beneficiary of a purchase money deed of trust. *See* Claim No. 3-2, Exs. 1-3. The loan matured on May 26, 2014, prior to the filing of Mr. Hurlburt's petition. *Id.* at Ex. 1. Ms. Black's proof of claim asserts a balance due as of the petition date of $180,971.72. Claim No. 3-2. Mr. Hurlburt scheduled the value of the Property as $40,000. BR Dkt. 1 at 22.[1]

On the same day he filed his petition, Mr. Hurlburt filed the complaint in this adversary proceeding, seeking to quiet title to the Property, to avoid the deed of trust, and objecting to Ms. Black's claim. The causes of action in the adversary proceeding arose from Mr. Hurlburt's contentions that the deed of trust was invalid due to an error in the originally filed document. In an order granting partial summary judgment dated December 5, 2016, this court determined that the deed of trust was valid. AP Dkt. 35. The remaining issue raised in the complaint, although with a slightly different legal analysis now that the validity of the deed of trust has been established, is the nature of Ms. Black's claim in the chapter 13 case given the seller-financed nature of the purchase-money deed of trust.

---

[1] References to the docket in the chapter 13 bankruptcy case will be noted as "BR Dkt. __," while references to the docket in the adversary proceeding will be noted as "AP Dkt. ___."

2

After the court entered its order finding that Ms. Black held a valid lien on the Property, Mr. Hurlburt filed an amended chapter 13 plan proposing to treat Ms. Black's claim as secured in the amount of $34,132.19, representing the $40,000 asserted value of the Property minus a tax lien held by Brunswick County in the amount of $5,867.81. The plan proposed to pay Ms. Black's secured claim in full at the rate of 4.5% per annum, with no treatment for the balance due under the note. BR Dkt. 28. A Second Amended Plan was filed on February 23, 2017, BR Dkt. 30, revising the proposed treatment of Ms. Black's claim to reflect a higher appraised value of the Property of $47,000, resulting in a secured claim of $41,132.19, and adjusting the plan treatment to accommodate adequate protection payments that had been required by an August 15, 2016 order.

Also on February 23, 2017, Ms. Black filed an "Objection to Debtor's Amended Plan and Motion to Convert or Dismiss Chapter 13 Case," BR Dkt. 29 (the "Objection"). In her Objection, Ms. Black contends, pursuant to 11 U.S.C. § 1322(b)(2) (known as the "anti-modification provision"), that Mr. Hurlburt cannot modify her rights because she is a creditor secured only by a lien on real property that is the debtor's principal residence. She acknowledges that because the debt matured prepetition, § 1322(c)(2) allows some modification of how the claim is paid, but maintains that under controlling case law Mr. Hurlburt must pay her claim in full with interest during the term of the chapter 13 plan. The Objection further alleges that if Mr. Hurlburt is required to pay Ms. Black's claim in full through the plan, he does not have sufficient disposable income to fund the plan, and thus he cannot propose a feasible, confirmable plan.

On March 9, 2017, Ms. Black filed a motion for summary judgment with respect to the legal issues raised in her Objection, and further requested that the legal issues be considered separately from confirmation of Mr. Hurlburt's plan. BR Dkt. 31. Meanwhile, the parties also

3

briefed the remaining issues contained in Ms. Black's motion for summary judgment in the adversary proceeding; in his response brief, Mr. Hurlburt requested that summary judgment be entered in his favor. *See* AP Dkts. 37, 39. In addition, the National Association of Consumer Bankruptcy Attorneys submitted an *amicus curiae* brief on behalf of Mr. Hurlburt. AP Dkt. 36.

A hearing on the Objection, Ms. Black's motion for summary judgment on the legal issue raised in the Objection, and the cross-motions for summary judgment in the adversary proceeding was held in Wilmington, North Carolina on April 13, 2017. The common thread among the matters is the proper treatment of Ms. Black's claim, given that it is secured only by real property that is the debtor's principal residence, but also that the value of the Property is less than the amount of the claim and Ms. Black's interest is subject to North Carolina's anti-deficiency statute, North Carolina General Statutes § 45-21.38.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In making this determination, conflicts are resolved by viewing all facts and inferences to be drawn from the facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). Summary judgment is not a "disfavored procedural shortcut," but an important mechanism for filtering out "claims and defenses [that] have no factual basis." *Celotex*, 477 U.S. at 327. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 323. Summary judgment should not be granted "unless the moving

4

party has established his right to a judgment with such clarity as to leave no room for controversy." *Portis v. Folk Constr. Co.*, 694 F.2d 520, 522 (8th Cir. 1982) (internal quotations omitted).

Here, there are no disputed issues of material fact,[2] and the matter may be determined as a matter of law.

## II. APPLICABLE LAW

### A. Sections 502(b) and 506(a) of the Bankruptcy Code

Section 502 of the Bankruptcy Code governs the allowance and calculation of claims. Pursuant to § 502(a), a claim for which a proof of claim is filed is deemed allowed, unless a party in interest objects. If an objection is filed, the amount of the claim is determined under § 502(b), except the claim shall not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."[3] 11 U.S.C. § 502(b)(1).

Whether the claim is secured, and in what amount, is determined through application of § 506(a)(1), which provides, in relevant part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1). In other words, strictly for purposes of determining the amount and classification of a creditor's claim, a claim is secured to the value of the collateral, and unsecured for the balance.

---

[2] The value of the Property is disputed, but until the legal determination is made regarding whether Mr. Hurlburt may cram down Ms. Black's claim, valuation is not yet material.

[3] Other exceptions that are not relevant to this matter are delineated in the statute.

5

### B.      Section 1322(b)(2) of the Bankruptcy Code

Section 1322(a) sets forth what *must* be included in a chapter 13 plan of reorganization, while § 1322(b) provides what *may* be included in a chapter 13 plan. Specifically, § 1322(b)(2) allows a debtor to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ." 11 U.S.C. § 1322(b)(2). Thus, when applied in conjunction with § 506(a), a chapter 13 debtor may modify the rights of a secured creditor by bifurcating its claim into secured and unsecured components as dictated by the value of the collateral, *unless* that creditor holds a claim secured only by real property that is the debtor's principal residence. In that situation, the creditor's rights cannot be modified at all, except that a debtor may cure a default over the life of the plan as set forth in § 1322(b)(5). *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993) (creditor's "rights" as reflected in mortgage instrument, including right to repayment of the principal in monthly installments over a fixed term at specified adjustable interest rates, are protected from modification by § 1322(b)(2); debtors cannot modify the payment and interest terms for the unsecured component without also [necessarily] modifying the terms of the secured component).

Reading §§ 506(a) and 1322(b)(2) together, however, courts have determined that where there is *no* value in the debtor's residence to secure any portion of a creditor's claim, then the creditor does not hold a secured claim under § 506(a), and thus the anti-modification provisions of § 1322(b)(2) do not apply. In that situation, the claim may be treated as fully unsecured in the chapter 13 plan. *In re Kidd*, 161 B.R. 769 (Bankr. E.D.N.C. 1993). *Contrast Bank of America, N.A. v. Caulkett*, 575 U.S. --, 135 S. Ct. 1995 (2015) (in chapter 7 cases, a consensual lien survives the bankruptcy intact even where there is no value in the collateral to secure the claim).

6

## C. Section 1322(c)(2) of the Bankruptcy Code

In the Bankruptcy Reform Act of 1994, Congress added § 1322(c)(2), which applies in cases, like this one, where the loan matured prior to filing or where the loan is set to mature prior to the end of the chapter 13 plan payments. It provides,

> in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

11 U.S.C. § 1322(c)(2). Section 1325(a)(5), in turn, allows a debtor to pay to a secured creditor the value of the allowed secured claim over the life of the plan.

The Fourth Circuit considered whether this provision allowed debtors to bifurcate the undersecured claims of residential mortgage holders into secured and unsecured claims in *Witt v. United Cos. Lending Corp. (In re Witt)*, 113 F.3d 508 (1997). In *Witt*, the chapter 13 debtors contended that § 1322(c)(2) was enacted to overrule *Nobelman* in cases where the note matured prepetition or would mature prior to the completion of the plan. The Fourth Circuit rejected the argument, holding that § 1322(c)(2) allowed only the modification of the "payment" of the claim, rather than modification of the "claim," meaning that the remaining payments could be stretched out over time, but the debtors were still required to pay the full amount of the allowed claim. 113 F.3d at 512. The court specifically held that "[section] 1322(c)(2) does not permit the bifurcation of an undersecured loan into secured and unsecured claims if the only security for the loan is a lien on the debtor's principal residence." *Id.* at 513-14.

*Witt* has been largely criticized, and other circuits have instead held that the plain language of § 1322(c)(2) permits the modification of home mortgages through the bifurcation of the claim into secured and unsecured components, with the unsecured component crammed down pursuant

7

to § 1325(a)(5). For example, in *American General Finance, Inc. v. Paschen (In re Paschen)*, 296 F.3d 1203, 1208 (11th Cir. 2002), the court found "the *Witt* court's view that the phrase 'as modified' modifies 'payment,' rather than 'claim'" to be "a grammatically strained reading of the statute." Instead, the *Paschen* court interpreted the prefatory phrase "notwithstanding subsection (b)(2)" to be "a plain statement that" the anti-modification provision "does not have any application to the class of claims that fall under § 1322(c)(2)," *id.* at 1207, and that the reference to § 1325(a) is an "explicit statement" that claims falling within § 1322(c)(2) are subject to bifurcation into secured and unsecured parts, "with the unsecured portion subject to 'cramdown' pursuant to § 1325(a)(5)." *Id.* at 1208. The *Paschen* court further noted that the great weight of authority supported its interpretation, and that *Witt* "appear[ed] to be the only case interpreting the statute differently." *Id.* at 1209.

While this court is bound by the holding in *Witt*, this court has interpreted its holding narrowly, finding it permissible to modify the interest rate on a note that matured prepetition as a modification of only a payment term. *In re Hubbell*, 496 B.R. 784 (Bankr. E.D.N.C. 2013). *But see In re Varner*, 530 B.R. 621 (Bankr. M.D.N.C. 2015) (disagreeing with *Hubbell*, finding that *Witt* allows "stretching payments out over the life of the plan," but not modification of the contractual interest rate).

### D.    The Anti-Deficiency Statute, North Carolina General Statutes § 45-21.38

Layered atop these Bankruptcy Code provisions in this case is the North Carolina anti-deficiency statute, which applies to seller-financed mortgages and provides, in relevant part:

> In all sales of real property by mortgagees and/or trustees under powers of sale contained in any mortgage or deed of trust executed after February 6, 1933, or where judgment or decree is given for the foreclosure of any mortgage executed after February 6, 1933, to secure to the seller the payment of the balance of the purchase price of real property, the mortgagee or trustee or holder of the notes

8

>  secured by such mortgage or deed of trust shall not be entitled to a deficiency judgment on account of such mortgage, deed of trust or obligation secured by the same . . . .

N.C. Gen. Stat. § 45-21.38.

In *Adams v. Cooper*, 340 N.C. 242, 460 S.E.2d 120 (1995), the North Carolina Supreme Court noted that, "Our cases interpreting and applying the anti-deficiency statute have consistently held that the 1933 General Assembly intended it to prevent any suit on such a purchase money obligation other than one to foreclose upon the real property securing the obligation." 340 N.C. at 244, 460 S.E.2d at 121. Citing to *Realty Co. v. Trust Co.*, 296 N.C. 366, 371, 250 S.E.2d 271, 274 (1979), the court specified that "[t]he anti-deficiency statute prevents an action for personal judgment on the note and limits the creditor to the property conveyed in the deed of trust." *Id.* The *Cooper* court held that the limitation on remedy extended beyond the borrower to third-party guarantors, and reiterated that the statute "bars any suit on the note, whether before or after foreclosure." *Id.* (citing *Barnaby v. Boardman*, 313 N.C. 565, 330 S.E.2d 600 (1985)).

### E.     "Chapter 20"

Although not directly at issue in this case, the matter before the court is analogous to cases in which a debtor has obtained a chapter 7 discharge of his or her personal liability on a mortgage, and later files a chapter 13 case (a so-called "chapter 20" case). In both situations, the mortgage creditor's rights on default are limited to foreclosure of the property, with no recourse against the borrower. Indeed, the Supreme Court of the United States has said as much, noting that "[i]nsofar as the mortgage interest that passes through a Chapter 7 liquidation is enforceable only against the debtor's property, this interest has the same properties as a nonrecourse loan." *Johnson v. Home State Bank*, 501 U.S. 78, 86 (1991).

In *Johnson*, the question before the Court was whether a debtor could include a mortgage lien in a chapter 13 plan "once the personal obligation secured by the mortgaged property has been discharged in a Chapter 7 proceeding." 501 U.S. at 80. After reviewing the statutory definition of "claim," the Court determined that because "the mortgage holder still retains a 'right to payment' in the form of its right to the proceeds from the sale of the debtor's property," and alternatively because the creditor has the equitable remedy of the right to foreclose after the debtor's default on the underlying obligation, "the surviving mortgage interest corresponds to an 'enforceable obligation' of the debtor." *Id.* at 84. As a result, the mortgage lien remained a "claim" against the debtor that could be "rescheduled" under chapter 13. *Id.* at 80. Because the property in *Johnson* was a farm and apparently not the debtor's principal residence, the Court did not provide any guidance on how an *in rem* residential mortgage claim may be treated in a chapter 13 plan, but it did determine that nothing in the Code prohibited the filing of a chapter 13 case after a debtor obtains a chapter 7 discharge. *Id.* at 87.

More recently, courts have considered the question of the permissible treatment of a creditor whose *in personam* rights were extinguished in a chapter 7, and *in rem* rights were stripped due to a complete absence of value to support its lien. In *In re Sweitzer*, 476 B.R. 468 (Bankr. D. Md. 2012), the court held that in a chapter 20 case, the creditor who no longer had *in personam* rights against the debtor due to the chapter 7 discharge and whose lien was stripped in the chapter 13 case held no claim that was entitled to treatment in the chapter 13 plan.

> [The creditor's] *in personam* rights and claims against the debtors were discharged in their prior Chapter 7 case. Those *in personam* rights and claims cannot now be resurrected and allowed as an unsecured claim in this case in contravention of that discharge simply because [the creditor's] *in rem* rights were stripped off in this case.

10

476 B.R. at 473. Otherwise, the court noted, a nonrecourse debt would be converted into a recourse debt. *Id.* at 472. The court distinguished *Johnson*, 501 U.S. 78, which held that a creditor with only *in rem* rights still had a claim in a debtor's chapter 13 case, because the creditor's *in rem* rights could not have been stripped in *Johnson* due to some value in the property to support the secured claim.

The Fourth Circuit later considered similar facts in *Branigan v. Davis (In re Davis)*, 716 F.3d 331 (4th Cir. 2013), in which the court reasoned that a completely valueless lien is classified as an unsecured claim under § 506(a) that may be modified under § 1322(b)(2), and that nothing in the 2005 amendments to the Bankruptcy Code "precludes the stripping off of valueless liens by Chapter 20 debtors." 716 F.3d at 336. In so holding, the court rejected the chapter 13 trustee's argument that any lien secured by real property, even if worthless, is a secured claim and thus subject to § 1325, noting that if that were the case, the analysis in *Nobelman* that first valued the claim under § 506(a) would be superfluous. "Rather, the Court could have simply held that, because the lien was secured by a primary residence, it falls within the anti-modification provision of section 1322(b), regardless of the value of the collateral." *Id.* at 338. While *Davis* held that the court could strip the *in rem* component of the valueless lien, the appellate court did not elaborate as to what that means for purposes of chapter 13 plan treatment, unlike the Maryland bankruptcy court in *Sweitzer*.[4]

*Davis* and *Sweitzer* are not directly applicable here, because in those cases there was no value to support a secured claim. There appears to be an absence of cases addressing the required

---

[4] Courts allowing lien-stripping in "chapter 20" cases also noted that the separate good faith requirement for plan confirmation could prevent confirmation where the sole purpose of the chapter 13 plan is to avoid a lien. *See Davis*, 716 F.3d at 338.

11

treatment of a claim under these facts, where a claim is secured by the debtor's principal residence with some value to support the claim, but no *in personam* liability. Perhaps the reason there is no case law is that the answer is simple: application of § 1322(b)(2) precludes any modification of the claim where there is value to secure it, regardless of whether the creditor could take action against the debtor upon default.

### III.    ANALYSIS

Having reviewed the relevant statutory provisions and applicable case law, the court can distill the relative positions of the parties to a few bullet points. Mr. Hurlburt, as supported by *amicus*, contends that:

(1) Because of the North Carolina anti-deficiency statute, Ms. Black can never have an "undersecured claim," but can only have a secured claim against the real property itself.

(2) Ms. Black is only entitled under North Carolina law to the value of the Property.

(3) Pursuant to § 506(a), Ms. Black's secured claim is limited to the value of the Property.

(4) *Witt* only prohibits bifurcation of an undersecured claim into secured and unsecured claims; because Ms. Black has only a secured claim, and no unsecured claim, *Witt* does not apply.

(5) If *Witt* does apply, Mr. Hurlburt seeks only to modify *payment* of the secured claim, which *Witt* allows. Application of § 506(a) does not bifurcate the claim into secured and unsecured claims, but determines the amount of the secured claim to be paid pursuant to § 1325(a)(5), in compliance with § 1322(c)(2).

Ms. Black, on the other hand, maintains that:

(1) She has a claim under § 502.

(2) Her claim is secured only by the debtor's principal residence.

(3) Her rights cannot be modified pursuant to § 1322(b)(2).

(4) According to *Witt*, § 1322(c)(2) does not allow Mr. Hurlburt to reduce Ms. Black's claim to the value of the Property.

As noted, Mr. Hurlburt maintains that he is not seeking to bifurcate the claim into secured and unsecured portions to be separately classified, which would be prohibited by *Nobelman*, but instead seeks simply to determine the amount of the secured claim. In truth, however, the debtor seeks to bifurcate the claim into a secured claim (that portion of the debt for which Ms. Black would have *in rem* rights) and a non-claim (that portion of the debt for which Ms. Black has neither *in rem* nor *in personam* rights). The debtor's effort to distinguish his proposal from impermissible bifurcation under *Nobelman* focuses too much on the use of the terms "secured claim" versus "unsecured claim" and separate classification of those portions of the claim, and not enough on the underlying principle of *Nobelman* and the clear language of the statute: the rights of ***a holder*** of a claim secured only by the debtor's principal residence cannot be modified under § 1322(b)(2) where there is some value to support the secured claim, no matter what one calls the modification. *Johnson* supports this view in its holding that a creditor holds a § 502 claim subject to chapter 13 treatment even where the personal liability of the debtor has been discharged. 501 U.S. at 80.

The debtor has not directed the court to any binding authority that suggests that § 1322(b)(2) does not apply. That section does not prohibit modification of "a claim secured by real estate on which the debtor has personal liability," it prohibits modification of a claim for which there is no security other than real estate that is the debtor's principal residence. The Supreme

13

Court has held that Ms. Black has a "claim." There is no dispute that there is no security other than the Property, and there is no dispute that the Property is worth at least one dollar. The cited cases allowing modification of liens on the debtor's residence apply only where there is not even one dollar of value to support the security interest, a situation that does not apply here.

The court finds that § 1322(b)(2) does apply,[5] and it must determine whether the proposed treatment complies with that provision's mandate. The *Nobelman* Court observed that one cannot modify the payment and interest terms of the unsecured portion of a claim without modifying the creditor's rights with respect to the secured portion. 508 U.S. at 331. Here, Mr. Hurlburt is asking not to pay at all that portion of the claim that is not supported by value in the Property. It is difficult to see how a debtor could create a "non-claim" for the portion of the debt not supported by the property value (which, despite Mr. Hurlburt's contention to the contrary, is by definition "undersecured") without also modifying the ***creditor's rights*** with respect to the secured claim. To decide, however, the court must consider what treatment would be a "modification" of Ms. Black's rights with respect to the secured claim.

According to *Nobelman*, the creditor's "rights" that are protected from modification by § 1322(b)(2) are those reflected in the mortgage instrument, including the right to repayment of the principal in monthly installments over a fixed term at specified adjustable interest rates, the right to retain the lien until the debt is paid off, and the right to proceed against the property by foreclosure and public sale. 508 U.S. at 329-30. Here, Ms. Black's rights as set forth in the note and deed of trust include the right to receive repayment of the principal amount of $131,000 at a

---

[5] Because the note matured prepetition, courts holding that § 1322(c)(2) takes such claims entirely outside the scope of § 1322(b)(2) would find otherwise. However, this court is bound by *Witt*, which rejected that interpretation of § 1322(c)(2).

14

fixed rate of interest, and to foreclose upon default. The loan is in default, and Ms. Black began foreclosure proceedings. The automatic stay of this bankruptcy case interrupted that foreclosure. Now, the debtor seeks to modify what constitutes a default under the note: whereas the note itself requires repayment of $131,000 at 6 percent, the proposed plan would require only repayment of $41,132.19 at 4.5 percent.[6] Only if Mr. Hurlburt defaults on *those* payments would Ms. Black be able to obtain relief from the automatic stay and exercise her contractual and state law rights to foreclose. The fact that Mr. Hurlburt asserts that the amount of money Ms. Black will receive under the plan will equate to the proceeds she could obtain should she foreclose does not change that her rights would be modified under the plan. Certainly she could consent to the proposed treatment, but otherwise, she is entitled to her option to foreclose, or not, if she is not receiving payments as provided in the note. That is the bargain that she and Mr. Hurlburt struck, and § 1322(b)(2) does not allow the debtor to modify that bargain. Those are the "rights" as defined by *Nobelman*.

Further, *Witt* mandates the same result.[7] *Witt* provides that 1322(c)(2) allows modification only of the payment of the claim secured by the debtor's principal residence. While Mr. Hurlburt contends that he seeks only to modify the *payment* of the secured claim, in fact he seeks to modify the claim entirely, by reducing the principal and interest and by curtailing Ms. Black's right to foreclose unless he defaults on the payments on the modified claim.

---

[6] The note also provided that it would be paid in full by May 26, 2014, but there is no question that the debtor could permissibly cure that default under the chapter 13 plan with a proposal to pay the balance of the note over the life of the plan.

[7] Mr. Hurlburt and *amicus* attempt to limit the reach of *Witt*; however, they have not provided the court with a compelling distinction but instead focus on the widespread criticism of *Witt* outside of this circuit. Whether this court agrees with *Witt* or not, it is binding precedent in the Fourth Circuit.

15

The policy behind the anti-modification provision expressed in Justice Stevens' concurrence in *Nobelman*, that "favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market," 508 U.S. at 332, supports the court's conclusion here that the debtor cannot "cram down" Ms. Black's claim into a secured claim for the value of the Property and no claim for the balance. Where there is some value to support the secured claim, if a debtor wishes to retain his or her residence, he or she must pay the entire debt. Lenders assume the risk that borrowers may file chapter 13 and have the opportunity to cure a default, but lenders also have bargained for the right to foreclose on the real property collateral if the debtor stops paying.[8]

The benefit of chapter 13 for Mr. Hurlburt is that he can stretch out the balance due over an additional five years, and he has the added benefit from the North Carolina Anti-Deficiency Statute of no personal liability on the note should he later default on the allowed cure. But under these facts – as distinct from those in *Davis* and *Sweitzer* – he cannot use chapter 13 to force Ms. Black to have no remedy while he continues to reside in the Property at a substantially reduced price. If Mr. Hurlburt wants to retain the Property, he must pay what he agreed to pay for it.

## CONCLUSION

Based on the foregoing, the court finds that (1) Ms. Black holds a claim pursuant to § 502, (2) her claim is secured only by a security interest in real property that is Mr. Hurlburt's primary residence, (3) her rights cannot be modified pursuant to § 1322(b)(2), (4) the proposed treatment is an impermissible modification under § 1322(b)(2), and (5) § 1322(c)(2) as interpreted by *Witt*

---

[8] Second- or lower-position lenders also assume the risk that their liens could be stripped in chapter 13 where the value of the property does not exceed the first lien. First lien lenders, however, are not likely to have assumed the risk that property's value will be reduced to zero.

does not permit the proposed treatment of Ms. Black's claim. Accordingly, Ms. Black's motion for summary judgment is ALLOWED, and Mr. Hurlburt's cross-motion for summary judgment is DENIED. A separate judgment will be entered to that effect. Further, Ms. Black's objection to confirmation of the Second Amended Chapter 13 Plan is ALLOWED; however, her motion to dismiss is DENIED without prejudice. Mr. Hurlburt may, if he chooses, file an amended chapter 13 plan consistent with the terms of this order, within 30 days of the date of this order, which will then be considered for confirmation in the ordinary course.

**END OF DOCUMENT**